UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

GARY VARGAS EVANS,
also known as "G," "Heavy G," and "El Gordo"

19 CR 849

Charles R. Norgle
District Judge

**GOVERNMENT'S MOTION FOR
REVOCATION OF THE MAGISTRATE JUDGE'S RELEASE ORDER**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby moves, pursuant to 18 U.S.C. § 3145(a)(1), for an order revoking the release order entered on February 24, 2020, by Magistrate Judge Michael S. Berg of the Southern District of California, where defendant is currently awaiting removal to the Northern District of Illinois.

**I.      Procedural Background**

On November 7, 2019, defendant GARY VARGAS EVANS was charged in a sealed Criminal Complaint with attempting to possess five kilograms or more of cocaine and attempting to possess one kilogram or more of heroin, both in violation of Title 21, United States Code, Sections 846. (Dkt. No. 1).

On January 14, 2020, defendant was charged in a sealed Indictment with attempting to possess five kilograms or more of cocaine and attempting to possess one kilogram or more of heroin, both in violation of Title 21, United States Code, Sections 846. (Dkt. No. 24). These charges fall under the Controlled Substances Act and, because defendant is alleged to have committed these offenses after having been

convicted of a serious drug offense for which he served more than 12 months' imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense, the pending charges carry a mandatory minimum term of 15 years' imprisonment, with a maximum term of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(i) and (ii); 21 U.S.C. § 851.

In this case, the government is entitled to a detention hearing because defendant was charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. 18 U.S.C. §3142(f)(1)(C). In addition, a detention hearing must be held because this case involves a serious risk that defendant will flee. 18 U.S.C. §3142(f)(2).

On February 24, 2020, a detention hearing was held before Judge Michael S. Berg of the Southern District of Texas, who denied the government's motion to detain defendant. Judge Berg set a secured bond of $40,000, with various conditions of pretrial release. *See* Exhibit A ("Pretrial Release Order").[1] On or about March 5, 2020, Judge Berg denied the government's request to stay entry of the release order. However, as of the time of the filing of this motion, defendant has not yet posted the required security. An identity hearing is currently scheduled for March 17, 2020.

In this case, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure defendant's appearance as required or the safety

---

[1] A Pretrial Services Report was written as to defendant. However, per Local Rules, that report may not leave the courtroom in the Southern District of California. As such, counsel for the government in this district has not obtained or reviewed the report.

of the community because defendant was charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. 18 U.S.C. § 3142(e)(3)(A).

The government moves to revoke Judge Berg's order granting defendant bond pursuant to 18 U.S.C. § 3145(a)(1) because defendant has not rebutted the presumption of detention set forth in 18 U.S.C. § 3142(e)(3)(A), and, even if he had, no combination of conditions will reasonably assure defendant's appearance in court or the safety of the community.

## II.    Factual Background

As detailed in the Criminal Complaint, on November 22, 2017, and January 24, 2018, defendant arranged the delivery of ten kilograms of cocaine and two kilograms of heroin, respectively, from two separate suppliers to an individual who, unbeknownst to defendant, was cooperating with law enforcement ("CS-1").

Specifically, on or about September 24, 2017, defendant arranged the delivery of approximately five packages of suspected cocaine to CS-1 (who subsequently became a DEA confidential source), for CS-1 to temporarily store. Between on or about September 27, 2017, and on or about February 16, 2018, CS-1 conducted multiple consensually recorded phone calls and meetings with defendant during which defendant coordinated and attempted to coordinate the receipt of multiple kilograms of cocaine and heroin to CS-1 for further distribution to defendant's customers.

3

Between on or about November 21, 2017, and on or about November 22, 2017, defendant coordinated with Individual C to attempt to receive approximately ten brick-shaped packages of cocaine (through CS-l acting on defendant's behalf). After Individual C detected law enforcement's surveillance, he abandoned the Jeep he was driving, and thereafter law enforcement searched the Jeep and found approximately ten kilograms of cocaine.

Additionally, between on or about January 22, 2018, and on or about January 24, 2018, defendant coordinated with co-defendant, CASTULO CORTES, to attempt to receive approximately two kilograms of heroin (through CS- 1 acting on defendant's behalf) for delivery to defendant's customer in Ohio. As CORTES drove to meet CS-1 on or about January 23, 2018, law enforcement conducted an investigatory stop where a consent search of CORTES's Jeep revealed approximately two kilograms of heroin.

After an arrest warrant issued upon the filing of the Criminal Complaint on November 7, 2019, investigators searched for defendant at his last known residence on the 1300 block of Schilling Street in Chicago Heights, Illinois. Investigators surveilled this residence and elsewhere for two to three weeks but did not locate defendant.

VARGAS EVANS's codefendant, CASTULO CORTES, was arrested on or about December 3, 2019, and he had his initial appearance that same day. During the proceeding, the Criminal Complaint was unsealed, which thereby made public the allegations against VARGAS EVANS.

On December 12, 2019, investigators sent to defendant's Schiller Street residence a notification that his cell phone had been tracked by law enforcement. The notification was sent by Fed Ex. Tracking information shows the notification was received on December 14, 2019, and signed for by "N. EVANS," who is not identified.

Defendant was arrested on or about February 22, 2020, attempting to enter the United States from Mexico at the Otay Mesa Port of Entry, not far from San Diego. According to Customs and Border Protection records, VARGAS EVAN said he was going to a wedding in San Diego.

Based on these handwritten CBP records, it appears defendant also lied to CBP officers about his residential information. In four separate locations, the "address" field provides an address on "Schilling Avenue" or "Schilling." As noted, defendant's address in Chicago Heights was on "Schilling Street." But on these CBP records, it twice lists defendant's residence as being on "Schilling Avenue" in Chula Vista, California, once on that street in El Cajon, California, and once on that street in a town that is not decipherable (but is clearly not Chicago Heights). Further, the house number defendant appears to have given in relation to the supposed residence in Chula Vista, California, was off by one digit from his known address on Schilling Street in Chicago Heights. At the same time, the house number defendant gave in relation to the supposed residence in El Cajon, California, and the indecipherable town, was the same house number as the known address on Schilling Street in Chicago Heights.

A Google search indicates there is no "Schilling Avenue" in either El Cajon or Chula Vista.

## III.    Legal Standard

Under the Bail Reform Act, the government may seek review of a magistrate judge's release order. 18 U.S.C. § 3145(a)(1). The district judge, who retains original jurisdiction over the case, reviews the release order *de novo*. *United States v. Messino*, 842 F. Supp. 1107, 1109 (N.D. Ill. 1994). The district judge also has the discretion to receive additional evidence. *Id*. In a rebuttable presumption case such as this one, defendant has the obligation to rebut the presumption in favor of detention by presenting evidence that there are conditions that can be imposed that will reasonably assure defendant's appearance in court or the safety of the community. 18 U.S.C. § 3142(e)(3)(A). If defendant successfully rebuts the presumption of detention, the government must establish risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence.

## IV.    Argument

Defendant should be detained and removed to the Northern District of Illinois in custody. He has not rebutted the presumption of detention set forth in 18 U.S.C. § 3142(e)(3)(A), and, even if he had, no combination of conditions will reasonably assure defendant's appearance in court or the safety of the community. Defendant was just recently in Mexico, and his stated purpose for coming back to the United States—a wedding—indicates he intended to stay in the United States only temporarily. Defendant is a flight risk, and there is strong evidence that he trafficked kilograms

6

of heroin and cocaine in the Chicago area after already having been convicted of a federal drug trafficking crime. The factors listed by Congress in the Bail Reform Act (18 U.S.C. § 3142(g)) weigh heavily in favor of the defendant's detention in this case.

### A.    Nature and Circumstances of the Offense

Again, this is a presumption case. Here, the presumption in favor of detention is warranted and especially strong—defendant has been charged with an offense that carries a fifteen-year mandatory minimum term of imprisonment and a maximum term of life imprisonment. Defendant, who has already shown his ability and willingness to go to Mexico, could very rationally decide to flee back to Mexico rather than face a mandatory lengthy prison term.

Defendant also appears to be a flight risk because there is reason to believe he was aware of the pending charges in this case and was thereafter located in Mexico. As noted above, notification that defendant's cell phone was being tracked was sent to his last known address—in Chicago Heights—and that notification was received on December 14, 2019, by someone with the same last name as defendant. Additionally, defendant's codefendant was arrested on December 3, 2019, at which point the complaint that also charged defendant was unsealed. Finally, when defendant was arrested crossing from Mexico into the United States on February 22, 2020, it appears he provided false information about his residential address four separate times—each time using his street from Chicago Heights, but twice listing a different street number, and all four times identifying a town in California instead of Chicago Heights. This strongly demonstrates defendant was aware of this pending

7

case and did not want to be connected to the Chicago area.

Furthermore, defendant has already demonstrated his ties to Mexico—that is where defendant was apparently located until his arrest. When asked why he was coming into the United States, defendant said for a wedding. This response suggests defendant had already decided to return to Mexico.

In addition, this offense is a serious one. As detailed in the Complaint, defendant was actively involved in trafficking both heroin and cocaine. His depth of participation was demonstrated by his use of different sources of supply to obtain these drugs. Further, defendant sought to insulate himself by using others, including CS-1, to receive and transport narcotics on his behalf.

### B.    Weight of the Evidence

The weight of the evidence is strong. As detailed in the complaint, defendant was covertly recorded on multiple occasions communicating with CS-1—both in person and over the phone—about trafficking narcotics, including one transaction involving ten kilograms of cocaine and another transaction involving two kilograms of heroin. These 12 kilograms of narcotics were seized by law enforcement. And of course, CS-1 witnessed these same events personally.

### C.    History and Characteristics of Defendant

Defendant was previously convicted of a federal drug trafficking offense for which he served a substantial prison sentence. On or about April 19, 2006, defendant pled guilty to conspiring to knowingly distribute marijuana in the United States District Court for the Eastern District of Missouri (02 CR 602), and was sentenced to

78 months' imprisonment. Notwithstanding this prior conviction and sentence, defendant began trafficking drugs once again, this time with cocaine and heroin, as alleged in this instant case.

### D. Nature and Seriousness of the Danger to the Community Posed by Defendant's Release

Defendant is a recidivist. He served several years in federal prison and yet he returned to drug trafficking. Defendant remains a threat to the community if out on pretrial release.

WHEREFORE, the government respectfully requests, pursuant to 18 U.S.C. § 3145(a)(1), that this Court enter an order revoking the release order entered by Magistrate Judge Michael S. Berg on February 24, 2020, and order the defendant to be removed in custody to the Northern District of Illinois.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:     /s/ *Andrew C. Erskine*
        Andrew C. Erskine
        Assistant United States Attorney
        219 S. Dearborn Street, Ste. 500
        Chicago, Illinois 60604
        (312) 353-1875

Dated: March 6, 2020